UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JANELLE K. SZOKE,

      Plaintiff,

v.                                                               Case No. 8:21-cv-502-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

      Defendant.
_____/

**O R D E R**

    The Plaintiff seeks judicial review of the Commissioner's decision denying her

application for Disability Insurance Benefits (DIB).  For the reasons discussed below,

the Commissioner's decision is affirmed.

I.

    The Plaintiff was born in 1971, has a GED, and has past relevant work

experience as an underwriter.  (R. 36–37, 86, 248).  In December 2017, the Plaintiff

applied for DIB, alleging disability as of July 2017 due to anxiety, depression,

hypothyroidism, adrenal fatigue, chronic fatigue syndrome, and adult human growth

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, replacing the former Commissioner, Andrew M. Saul.  Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Kijakazi is substituted for Mr. Saul as the Defendant in this suit.

hormone deficiency.  (R. 86–87).  The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration.  (R. 95, 109).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in October 2019.  (R. 62–73, 127–28).  The Plaintiff was represented by counsel at that proceeding and testified on her own behalf.  (R. 62, 65–73).

Following the hearing, the ALJ directed that psychological and physical consultative examinations of the Plaintiff be performed by Maria Jimenez, Psy.D. and Joseph Schreier, D.O., respectively.  (R. 1299–1305, 1306–17).  The ALJ also solicited and received a response to an interrogatory questionnaire from a vocational expert (VE) (R. 326–34) and then convened a supplemental hearing in April 2020 to receive additional evidence relative to the Plaintiff's DIB application (R. 45–61).[2]

In a decision issued in August 2020, the ALJ determined that the Plaintiff (1) had not engaged in any substantial gainful activity since her alleged onset date in July 2017; (2) had the severe impairments of arthritis, tachycardia, hypertension, adrenal fatigue, traumatic brain injury, chronic fatigue syndrome, and Hashimoto's and autoimmune thyroiditis; (3) did not, however, have an impairment or combination of impairments that met or medically equaled any of the listings;[3] (4) had the residual

---

[2] The VE who responded to the interrogatory questionnaire appeared at the second hearing but did not testify.  (R. 45).

[3] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  When a claimant's affliction matches an impairment on the list, the

functional capacity (RFC) to perform sedentary work subject to certain physical and environmental limitations;[4] and (5) based on the VE's response to the interrogatory questionnaire, could not engage in her past relevant work but could perform another job that exists in significant numbers in the national economy—namely, surveillance system monitor. (R. 22–38). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 38).

The Appeals Council denied the Plaintiff's request for review. (R. 6–11). Accordingly, the ALJ's decision became the final decision of the Commissioner.

## II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[5] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by

---

claimant is automatically entitled to disability benefits. *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

[4] These limitations included that the Plaintiff could lift and/or carry up to ten pounds occasionally; could stand and/or walk for up to three hours and sit for up to five hours in an eight-hour workday; required a sit/stand option, with an alternating interval of thirty to sixty minutes; could occasionally push and pull with her upper extremities, as well as reach waist to chest height and reach above shoulder level with both arms; could frequently handle, finger, and feel with both hands; could not climb ramps, stairs, ladders, ropes, or scaffolds; could not balance, stoop, kneel, crouch, or crawl; and could not work around high, exposed places, moving mechanical parts, humidity, wetness, pulmonary irritants, extreme temperatures, or vibrations. (R. 31).

[5] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[6]  Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)).  Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  If the Commissioner carries that burden, the claimant must then prove she cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279.  In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v.*

---

[6] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

*Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing.  42 U.S.C. § 405(g).  Judicial review is limited to determining whether the Commissioner applied the proper legal standards and whether the decision is buttressed by substantial evidence.  *Id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted).  Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted).  In evaluating whether substantial evidence bolsters the Commissioner's decision, a court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence," even if it finds that the evidence preponderates against the Commissioner's determination.  *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  While a court will defer to the Commissioner's factual findings, it will not defer to her legal conclusions.  *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## III.

The Plaintiff raises two challenges on appeal: (1) the ALJ erred in his evaluation of certain medical opinions pertaining to the Plaintiff's mental impairments given the

evidence before him, including the Plaintiff's subjective complaints of pain and other symptoms; and (2) the ALJ did not fulfill his duty to resolve a conflict between the VE's response to the interrogatory questionnaire and the requirements of the surveillance system monitor position.[7]  (Docs. 16, 21).  After careful review of the parties' submissions and the record, the Court finds that the Plaintiff's challenges lack merit.

A.

As noted above, the ALJ's task at step four is to determine a claimant's RFC and her ability to engage in her past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545.  To do so, the ALJ must decide based upon all the pertinent information before him what duties and responsibilities a claimant can perform in a work setting despite any physical or mental limitations caused by the claimant's medical condition and attendant symptoms.  *Id.*  In making this finding, an ALJ must consider all the medical opinions in a claimant's case record, together with the other relevant evidence. *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)); 20 C.F.R. § 404.1513a(b)(1).  A medical opinion is a statement from a physician or other acceptable medical source concerning what a claimant may be able to do notwithstanding her impairments; whether the claimant is restricted in her capacity to engage in various work activities; and whether the claimant

---

[7] The Court has reordered the Plaintiff's challenges for purposes of its analysis.

6

can see, hear, or use her other senses or "adapt to environmental conditions, such as temperature extremes or fumes."  20 C.F.R. § 404.1513(a)(2).

The Regulations governing the evaluation of medical opinions were amended for disability applications filed on or after March 27, 2017, as this one was.  20 C.F.R. § 404.1520c; *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 n.4 (11th Cir. 2021). The ALJ now determines the persuasiveness of a medical opinion instead of generally basing its weight on the source of the opinion.  *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c.  In conducting this analysis, an ALJ must consider the following five factors: (1) supportability; (2) consistency; (3) the source's relationship with the claimant; (4) the source's area of specialization; and (5) any other relevant factors "that tend to support or contradict a medical opinion," such as whether the source is familiar with the other record evidence or has "an understanding of [the SSA's] disability program's policies and evidentiary requirements."  *Id*. § 404.1520c(c); *see also Nixon v. Kijakazi*, 2021 WL 4146295, at *3 (M.D. Fla. Sept. 13, 2021) (citation omitted).

Of these factors, supportability and consistency are the most important.  20 C.F.R. § 404.1520c(b)(2); *Nixon*, 2021 WL 4146295, at *3 (citation omitted). Supportability addresses the extent to which a medical source has articulated record evidence bolstering his opinion, while consistency concerns the degree to which a medical source's opinion conforms to other evidence in the record.  20 C.F.R. § 404.1520c(b)(1)–(2), (c)(1)–(2); *Barber v. Comm'r of Soc. Sec.*, 2021 WL 3857562, at *3 (M.D. Fla. Aug. 30, 2021) (citation omitted).  The amended Regulations require an

ALJ to discuss supportability and consistency but do not obligate him to explain how he analyzed the other three factors.  20 C.F.R. § 404.1520c(b)(2); *Freyhagen v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citation omitted).   In the end, the amended Regulations—like their predecessors—do not preclude an ALJ from rejecting any medical opinion if the evidence buttresses a contrary finding.  *Freyhagen*, 2019 WL 4686800, at *2 (citing *Wainwright v. Comm'r of Soc. Sec. Admin.*, ___ F. App'x ___, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam)).

Where, as here, a claimant asserts that she suffers from pain or other symptoms, a court must assess such subjective complaints using the Eleventh Circuit's "pain standard." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam).  Under this standard, a claimant must show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged [symptom] arising from the condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged [symptom]." *Id.* (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam)).

If a claimant meets this threshold, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms to determine how they restrict her capacity to work. 20 C.F.R. § 404.1529(c)(3).  The considerations relevant to this analysis include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type,

dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate her symptoms; (5) treatment (other than medication) the claimant receives or has received for relief of her symptoms; (6) any measures the claimant uses or has used to relieve her symptoms; and (7) other factors concerning the claimant's functional limitations due to her symptoms.  *Id*.

After assessing "a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed [on appeal] for substantial evidence."[8]  *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)).  The ALJ, however, "need not cite particular phrases or formulations" in conducting this analysis, so long as the reviewing court can be satisfied that the ALJ "considered [the claimant's] medical condition as a whole."  *Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 868 (11th Cir. 2019) (per curiam) (internal quotation marks and citation omitted); *see also Stowe v. Soc. Sec. Admin., Comm'r*, ___ F. App'x ___, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (explaining that if an ALJ does not identify specific and adequate reasons for rejecting a claimant's testimony about pain, "the record must be obvious as to the [ALJ's] credibility finding") (citing *Foote v. Chater*, 67 F.3d 1553,

---

[8] On March 16, 2016, Social Security Ruling (SSR) 16-3p superseded SSR 96-7p.  *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).  SSR 16-3p eliminates the use of the term "credibility" and clarifies that "subjective symptom evaluation is not an examination of an individual's character."  *Id*.  This change in terminology does not alter the substance of the Court's analysis.  *See Yangle v. Comm'r of Soc. Sec.*, 2020 WL 1329989, at *4 n.2 (M.D. Fla. Mar. 23, 2020); *Waters v. Berryhill*, 2017 WL 694243, at *6 n.4 (S.D. Ga. Jan. 30, 2017), *report and recommendation adopted*, 2017 WL 693275 (S.D. Ga. Feb. 21, 2017).

1561–62 (11th Cir. 1995) (per curiam)).  A reviewing court will not disturb a clearly articulated credibility finding made by an ALJ that is bolstered by substantial evidence. *Foote*, 67 F.3d at 1562 (citation omitted).

In this case, the Plaintiff asserted that she experienced a variety of symptoms due to her impairments,[9] including confusion, poor memory, chronic fatigue, brain fog, and frequent headaches.  (R. 28–32).  In evaluating these subjective complaints, the ALJ referenced the Eleventh Circuit's pain standard, along with his duty to account for all the Plaintiff's symptoms and the extent to which those symptoms could "reasonably be accepted" to comport with the objective medical evidence and other information before him based upon the applicable regulatory requirements.  (R. 31) (citing of 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017)).  The ALJ also rendered the following express credibility determination regarding the Plaintiff's subjective complaints:

> [T]he [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence[,] and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record. . . .

(R. 34).

In support of this credibility finding, the ALJ engaged in an extensive review of the record evidence.  Of relevance here, that review included the results of the psychological consultative exam conducted by Dr. Jimenez (R. 32–36), which

---

[9] As the ALJ stated in his decision, these impairments consisted of, among other things, "chronic fatigue syndrome, thyroiditis, adrenal fatigue, and a history of a traumatic brain injury."  (R. 32).

revealed, *inter alia*, that the Plaintiff had "no limitations in her ability to understand, remember, and carry out instructions and [to] make judgments on simple and complex work-related decisions" (R. 35) (citing R. 1299–1305).  The ALJ deemed Dr. Jimenez's opinion to be persuasive because it conformed to Dr. Jimenez's own examination and her accompanying explanation, and was also bolstered by the objective medical record.  *Id.*  The ALJ noted in the latter regard that although the Plaintiff reported "widespread complaints of confusion, difficulty with word finding, and poor memory associated with fatigue and a prior traumatic brain injury," there were "few objective findings that support[ed] these complaints."  *Id.*  The ALJ cited instances, for example, where the Plaintiff managed her stress, anxiety, and the effects of her prior trauma, as well as the results of mental status examinations of the Plaintiff throughout the record which showed she exhibited a "normal mood and affect, good attention and concentration, and no significant cognitive deficits."  *Id.* (citations omitted).  The ALJ further pointed out that since Dr. Jimenez's examination, more recent evaluations of the Plaintiff indicated she displayed "normal neurological and motor function, good strength and balance," and—according to another physician—"no clear focal neurological deficits."  (R. 33).

Of relevance here as well, the ALJ's recitation of the record evidence additionally included a discussion of the mental health assessments conducted by another consultative examiner, Dr. David A. Libert, and two treating physicians, Drs.

11

Agustin Tavares and Edwin Lee.[10]  (R. 35–36).  As described by the ALJ, Dr. Libert opined that the Plaintiff was unable to work and was "permanently and totally disabled from performing any occupation as a result of her medical conditions."  (R. 35) (citation omitted).  The ALJ deemed this opinion to be unpersuasive because, among other things: (1) it "reache[d] an issue that is exclusively reserved to the Commissioner[;]" (2) it did not include an explication of Dr. Libert's findings and was not buttressed by his own examination; (3) it was inconsistent with the other record evidence demonstrating that the Plaintiff had a "normal mental status with good attention, recall, concentration, social connection, and cognitive function[ing;]" and, "[m]ost notably," (4) it was not predicated upon any evaluation performed by Dr. Libert of the Plaintiff's cognitive functioning, mental status, or neurologic functioning notwithstanding the Plaintiff's reports of symptoms in these areas.  *Id.* (citations omitted).

With respect to Dr. Tavares, he opined, among other things, that the Plaintiff "was unable to function at work or return to work[;]" that the Plaintiff "often experience[d] medication side effects severe enough to interfere with [her] attention and concentration[;]" that the Plaintiff was "unable to tolerate even low stress jobs[;]" and that the Plaintiff was "likely to be absent from work more than three times per month."  (R. 35) (citations omitted).  The ALJ likewise found Dr. Tavares's

---

[10] In his decision, the ALJ incorrectly referred to Dr. Libert as "Dr. Elbert."  (R. 32, 33, 35).  As this misstatement appears to be nothing more than a scrivener's error, it does not affect the Court's analysis.  *Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975, 975 (11th Cir. 2014) (per curiam).

assessments to be unpersuasive because: (1) they also included a determination of a matter reserved to the Commissioner; (2) they were not accompanied by a "well supported" explanation; (3) they did not cohere with Dr. Tavares's own records, which contained "few supportive objective findings" and generally reflected "normal neurological" functioning; and (4) they were not bolstered by the evidence, which indicated that the Plaintiff possessed "normal" mental capabilities, with "good cognitive function[ing], normal attention and recall," as well as "good judgment and insight." *Id.* (citations omitted).

As for Dr. Lee, he submitted a letter on the Plaintiff's behalf which stated that the Plaintiff was "unable to work due to her medical condition." (R. 36) (citation omitted). The ALJ concluded that this opinion was unpersuasive as well because (1) it too concerned an issue reserved to the Commissioner; (2) it was not supported by any analysis from Dr. Lee; (3) it did not comport with Dr. Lee's own treatment notes; and (4) it conflicted with the objective medical findings, which "demonstrate[d] generally normal physical and mental functioning, despite the [Plaintiff's] complaints." *Id.* (citations omitted).

The Plaintiff does not contest the ALJ's evaluation of her subject complaints and has thus waived any such argument. *See Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 899 (11th Cir. 2022); *Battle v. Comm'r, Soc. Soc. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019) (per curiam) (citing *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998)); *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (per curiam) (citing *Cheffer v. Reno*, 55 F.3d 1517, 1519 n.1 (11th Cir. 1995)). Instead,

13

the Plaintiff contends that the ALJ did not properly consider the medical opinions of Drs. Libert, Tavares, and Lee, among others, and therefore erroneously failed to incorporate into his RFC determination any "cognitive" restrictions or "limitations related to [the Plaintiff] being off task." (Doc. 16 at 32–35). To buttress this contention, the Plaintiff maintains, *inter alia*, that these opinions are consistent with and bolstered by the record, which she claims shows that she suffered from "on-going, debilitating chronic fatigue" and "cognitive difficulties in the workplace." *Id.* at 33–34. This argument is flawed in a number of respects.

To begin, as the ALJ correctly observed in his decision, the assessments of Drs. Libert, Tavares, and Lee that the Plaintiff was disabled and/or unable to work address a question within the sole province of the Commissioner and accordingly did not have to be considered by the ALJ. *Jones v. Comm'r of Soc. Sec.*, 2021 WL 4352383, *5 (M.D. Fla. Sept. 24, 2021) (finding that an ALJ does not have to evaluate or discuss a conclusion that the claimant was unable to work because that is an issue exclusively delegated to the Commissioner) (citing 20 C.F.R. § 404.1520b(c)); *Marshall v. Kijakazi*, 2021 WL 4168107, at *4 (M.D. Fla. Sept. 14, 2021) (deeming a physician's assertion that "the [claimant was] unable to work" to be a "statement[ ] on an issue reserved to the Commissioner," which, under the new Regulations, is "inherently neither valuable nor persuasive" and need not be addressed at all by the ALJ) (internal quotation marks and citations omitted). Any suggestion by the Plaintiff to the contrary fails.

The Plaintiff's contention is also lacking insofar as it quarrels with the ALJ's application of the persuasiveness factors to the opinions of Drs. Libert, Tavares, and

Lee.  As discussed above, it is evident from a review of the whole of the ALJ's decision that he adequately addressed the degree to which these providers' findings were supported by their own explanations and examinations and comported with the other evidence of record.  *See* (R. 35) (citations omitted).

In short, "the ALJ did what the [R]egulations required: he articulated the supportability and consistency of [the providers'] opinion[s]."  *Denicourt v. Kijakazi*, 2022 WL 4449384, at *7 (S.D. Fla. Sept. 9, 2022) (citing 20 C.F.R. § 404.1520c(b)(2)); *see also Matos v. Comm'r of Soc. Sec.*, ___ F. App'x ___, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022)).  Furthermore, as demonstrated by the above recitation of the ALJ's detailed evaluation of those factors, which included citations to the exhibits before him, the ALJ's persuasiveness determination was adequately substantiated by the record.  (R. 35–36).  The fact that the Plaintiff may now be able to identify items in the record that point to a different conclusion is irrelevant given the circumstances presented.  *See Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion.") (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)).

The Court also does not find convincing the Plaintiff's related assertion that the ALJ was required to look to the other persuasiveness criteria besides supportability and consistency in assessing the opinions of Drs. Libert, Tavares, and Lee.  (Doc. 16 at 32–34).  The Plaintiff predicates this contention on the language contained in 20

15

C.F.R. § 404.1520c(b)(3),[11] which she claims mandates that an ALJ "consider factors such as the medical source's treatment relationship, medical specialty, etc." where "more than one [medical] opinion of record[ ] can meet the threshold 'persuasiveness' requirement as being consistent with and supported by the record." (Doc. 16 at 32).

The problem with this line of argument is that the ALJ properly found all three of these providers' opinions *unpersuasive* and was therefore not mandated to discuss how he evaluated the other remaining elements of the persuasiveness analysis. *See Freyhagen*, 2019 WL 4686800, at *8 (agreeing that the ALJ did not have to discuss factors besides supportability and consistency when the ALJ did not find the two opinions highlighted by the claimant to be equally persuasive); *see also Cooley v. Comm'r of Soc. Sec.*, 2021 WL 4221620, at *5 (S.D. Miss. Sept. 15, 2021) (concluding that because "the ALJ did not find that two medical opinions were 'equally well-supported' but 'not exactly the same'[,] . . . he did not need to detail his consideration of" the additional persuasiveness factors" and collecting cases); *Governor v. Comm'r of Soc. Sec.*, 2021 WL 1151580, at *7 (M.D. La. Mar. 2, 2021) (noting that "[o]nly if the ALJ finds that there are two or more equally persuasive medical opinions . . . on the same issue does the ALJ then need to explain how the . . . other . . . persuasive factors [besides

---

[11] That provision states, in pertinent part:

> When we find that two or more medical opinions . . . about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(3).

supportability and consistency] were evaluated with respect to those opinions"); *Healer v. Comm'r of Soc. Sec.*, 2020 WL 7074418, at *9 (W.D. Tex. Dec. 3, 2020) ("[The p]laintiff misconstrues the rule when he argues that the ALJ was required to 'break the tie' between the [medical] opinions [at issue] when the ALJ himself did not find these opinions to be in equipoise and substantial evidence supports the ALJ's determination.").

Finally, to the extent the Plaintiff requests that the Court engage in a *de novo* review of the opinions offered by Drs. Libert, Tavares, and Lee, the Court declines to do so.  It is well-settled that—as noted above—a court "may not decide the facts anew" or "re-weigh the evidence" when reviewing the Commissioner's decision on appeal. *Carter*, 726 F. App'x at 739; *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that when the Commissioner's decision is buttressed by substantial evidence, a court must affirm it even if the court would have reached another result and even if it finds that "the evidence preponderates against" the Commissioner's decision) (internal citation and quotations omitted).

In addition to contesting the ALJ's assessment of the opinions of Drs. Libert, Tavares, and Lee, the Plaintiff takes issue with the ALJ's evaluation of the assessments made by the physical consultative examiner, Dr. Schreier.  (Doc. 16 at 31–32).  As the ALJ noted in his decision, Dr. Schreier found, *inter alia*:

> [T]he [Plaintiff] can perform a range of sedentary exertional work, but should only lift and carry up to [ten] pounds occasionally.  He further determined the [Plaintiff] can sit for up to five hours, stand for up to two hours, and walk for one hour in an eight[-]hour workday.  The [Plaintiff]

has frequent use of the hands for fingering, feeling, and handling, but only [the] occasionally use of the upper extremities to push, pull, and reach in all directions.  He also determined the [Plaintiff] should never perform postural activities, nor have exposure to environmental hazards. Finally, Dr. Schreier noted the [Plaintiff] would not tolerate noxious stimuli or stressful situations, and may have difficulty following directions or reading instructions.  She should not operate potentially dangerous machinery, or be in a position where she is responsible for the safety of others.

(R. 34) (citation omitted).  The ALJ deemed Dr. Schreier's opinion to be "persuasive because it [was] well supported by Dr. Schreier's own examination and the accompanying explanation," and because it was also "consistent with the rest of the objective medical record, which suggest[ed] the [Plaintiff] should be limited to generally sedentary exertional work with avoidance of hazards, due to significant fatigue and sensitivity to environmental changes."  *Id.* (citations omitted).

The Plaintiff now contends that although the ALJ found Dr. Schreier's determination persuasive and acknowledged that "her significant fatigue causes limitations," the ALJ "blatantly ignore[d] Dr. Schreier's opinion that she would have difficulty following directions and reading instructions, would have difficulty in the workplace, [and] would not tolerate noxious stimuli or stressful situations."  (Doc. 16 at 31) (citing R. 1308, 1314).  The Plaintiff adds that further "evaluations were needed to properly evaluate her [chronic fatigue syndrome]."  *Id.*  This position is meritless as well.

As an initial matter, a fair reading of the ALJ's decision demonstrates that he did not "blatantly ignore" Dr. Schreier's findings, but instead considered them in his

analysis and factored a number of them into his RFC determination as physical and environmental limitations to the extent they were sufficiently bolstered by Dr. Schreier's examination and comported with the other record evidence. *See, e.g.*, (R. 30) (noting that the Plaintiff "cannot work around high, exposed places, moving mechanical parts, humidity, wetness, pulmonary irritants, extreme temperatures, or vibrations."); (R. 34) ("The [Plaintiff] should be limited to generally sedentary exertional work with avoidance of hazards, due to significant fatigue and sensitivity to environmental changes."). This is therefore not a situation—as the Plaintiff claims it to be—where an ALJ simply cherry-picked facts to substantiate a non-disability determination while turning a blind eye to those components of the record that militated in favor of the opposite conclusion. (Doc. 16 at 31).

Nor did the ALJ err, as the Plaintiff suggests, with respect to Dr. Schreier's statement that the Plaintiff "would have difficulty following directions and reading instructions, would have difficulty in the workplace, [and] would not tolerate . . . stressful situations." (Doc. 16 at 31) (citing R. 1308, 1314). Assuming—without deciding—that this comment by Dr. Schreier constituted a medical opinion, it bears highlighting that Dr. Schreier performed primarily a *physical* examination of the Plaintiff, not a psychological one, and that he also found that the Plaintiff demonstrated a "good memory for history, dates, and sequential events," as well as a "good general understanding, with cooperative behavior and no grossly abnormal observations, aside from a somewhat tearful affect." (R. 33) (citation omitted).

It also bears emphasizing that "an ALJ need not adopt every part of an opinion that the ALJ finds persuasive," *Rivera Misla v. Comm'r of Soc. Sec.*, 2021 WL 2417084, at *2 (M.D. Fla. June 14, 2021),[12] and is additionally not compelled to "specifically refer to every piece of evidence in his decision," *Dyer*, 395 F.3d at 1211; *see also Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).  Rather, the operative inquiry in this context is whether the ALJ properly evaluated the Plaintiff's medical condition as a whole and whether his determination is supported by substantial evidence.  *Dyer*, 395 F.3d at 1211; *Sesler*, 2021 WL 5881678, at *6.  Here, as described throughout the Court's review of the Plaintiff's first challenge, the ALJ conducted a robust and thorough analysis of the relevant medical opinions and other information before him concerning the Plaintiff's cognitive abilities, and supported his findings with specific reasons and references to the record evidence.  The Court is therefore satisfied that the ALJ considered the Plaintiff's condition as a whole and that his determinations were properly substantiated.  *See Alexander v. Berryhill*, 2019 WL

---

[12] *See also Sesler v. Comm'r of Soc. Sec.*, 2021 WL 5881678, at *6 (M.D. Fla. Dec. 13, 2021) (finding an ALJ is not required to adopt all portions of a medical opinion that he finds to be persuasive) (quoting *Rivera Misla,* 2021 WL 2417084, at *2); *Breaux v. Kijakazi*, No. 20-cv-21917-Altonaga/Goodman, (Doc. 29 at 14, 17) (S.D. Fla. July 22, 2021) (explaining that the "requirements within [the R]egulations . . . do not compel an ALJ to adopt every part of an opinion that she finds persuasive into the RFC" and finding that the ALJ "was not required to adopt any particular limitation in her RFC determination merely because she found these opinions to be persuasive"), *report and recommendation adopted*, 2021 WL 3721547 (S.D. Fla. Aug. 23, 2021); *Duarte H. v. Comm'r of Soc. Sec.*, No. 1:20-cv-01491-CMS, (Doc. 33 at 34) (N.D. Ga. Apr. 6, 2021) (acknowledging that an "ALJ is not required [under the new Regulations] to adopt any doctor's opinion verbatim in making an RFC assessment"); *Freyhagen*, 2019 WL 4686800, at *8 (stating that "the ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source" because the ALJ is responsible for deciding the RFC).

851414, at *8 (M.D. Fla. Feb. 22, 2019) (finding that an ALJ did not err in declining to adopt the entirety of an opinion where the ALJ sufficiently buttressed his decision).

Finally, to the extent the Plaintiff invites the Court to re-weigh Dr. Schreier's opinion, the Court declines to do so for the reasons explained earlier.  *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011); *Bloodsworth*, 703 F.2d at 1239.

### B.

Turning to the Plaintiff's second challenge, as discussed previously, where a claimant is unable to perform her past relevant work, an ALJ must determine at step five whether there are other jobs available in significant numbers in the national economy that a claimant can engage in given her RFC, age, education, and work experience.  *Phillips*, 357 F.3d at 1239.  As also noted above, the Commissioner bears the burden to show the existence and prevalence of such positions.  *Id*. at 1241 n.10 (citing *Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir.1996)).  One of the methods an ALJ may employ to meet this burden is through the testimony of a VE.  *Bryant v. Comm'r of Social Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012) (per curiam); *Laws v. Comm'r of Soc. Sec.*, 2022 WL 4483721, at *11 (M.D. Fla. Sept. 27, 2022) (citing *McSwain v. Bowen*, 814 F.2d 617, 619–20 (11th Cir. 1987)).  "A [VE] is an expert on the kinds of jobs an individual can perform based on [the individual's] . . . capacity and impairments." *Phillips*, 357 F.3d at 1240.

If an ALJ uses a VE, the ALJ must pose hypothetical questions to the VE which are accurate and which include all of a claimant's limitations. *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). An ALJ, however, need not "include findings in [his] hypothetical[s] that [he] properly rejected as unsupported." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

In rendering his opinion, a VE may consult a publication like the Dictionary of Occupational Titles (DOT),[13] *Goode*, 966 F.3d at 1281, or may "rely on [his] knowledge and expertise," *Griffin v. Comm'r of Soc. Sec.*, 2018 WL 3352929, at *10 (M.D. Fla. June 20, 2018) (citing *Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010); *Bryant*, 451 F. App'x at 839), *report and recommendation adopted*, 2018 WL 3344535 (M.D. Fla. July 9, 2018).   An ALJ may, in turn, base his step five determination solely on the VE's testimony.   *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019) (per curiam) (citing *Winschel*, 631 F.3d at 1180).

Where there is an apparent conflict between the VE's testimony and the DOT, an ALJ is required under the pertinent Social Security Ruling—SSR 00-4p—to identify and resolve the conflict.  *Washington*, 906 F.3d at 1362; SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).  As the Eleventh Circuit noted in *Washington*, "this duty is not fulfilled simply by taking the VE at [his] word that [his] testimony comports with the DOT."

---

[13] The DOT is "an extensive compendium of data [compiled by the Department of Labor] about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." *Washington*, 906 F.3d at 1357 n.2.

906 F.3d at 1362.  Rather, the ALJ has an "affirmative obligation" to discern and reconcile any such discrepancies and to set forth his reasons for doing so.  *Id.*

An "apparent conflict" under SSR 00-4p is "more than just a conflict that is made apparent by the express testimony of the VE."  *Id.* at 1365.  Instead, "[a]t a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case."  *Id.*  "Apparent" in this context is "taken to mean apparent to an ALJ who has ready access to and a close familiarity with the DOT."  *Id.* at 1366.

The ALJ's obligation to take notice of and to resolve apparent inconsistencies between the DOT and VE testimony exists both during and after the hearing and does not depend on whether they are raised by a party.  *Id.* at 1363.  "The failure to properly discharge this duty means that the ALJ's decision is not supported by substantial evidence."  *Id.* at 1362.

In this case, as noted above, the VE stated in response to the ALJ's interrogatory questionnaire (R. 331–34) that a hypothetical individual with the Plaintiff's age, education, work experience, and RFC as determined by the ALJ[14] could engage in the representative occupation of surveillance system monitor (R. 333–34).  The VE also stated that this position has a Specific Vocational Preparation (SVP) level[15] of 2 and is

---

[14] *Compare* (R. 332) (the hypothetical in the interrogatory sent to the VE) *with* (R. 31) (the ALJ's RFC determination).

[15] An SVP level is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a

unskilled.  (R. 333).  The VE further attested that, with the exception of some distinctions not relevant here, his response conformed to the DOT.  (R. 334).[16]

In his decision, the ALJ relied upon the VE's opinion at step five in concluding that the Plaintiff could perform the surveillance system monitor position.  (R. 37–38). In doing so, the ALJ found that, "[p]ursuant to SSR 00-4p, . . . the [VE's] testimony [was] consistent with the information contained in the [DOT]."  (R. 38).  The Plaintiff now posits that there are a number of discrepancies arising from the VE's testimony which the ALJ failed to recognize and address.  (Doc. 16 at 17–23).   Each of these alleged discrepancies will be addressed in turn.

The Plaintiff first contends that the ALJ's determination she could engage in unskilled work conflicts with the capabilities associated with the surveillance system monitor job.  *Id.* at 17–20.  To bolster this contention, the Plaintiff notes that according to the DOT, this occupation is assigned a reasoning level of three, *id.* at 18,[17] which means that a person holding the job must have the capacity to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form[ and] [d]eal with problems involving several concrete variables in or from

---

specific job-worker situation."  U.S. Dep't of Labor, DOT, App'x C, § II: Components of the Definition Trailer, 1991 WL 688702 (G.P.O. 4th ed. 1991).  An SVP level of 2 involves training of "[a]nything beyond [a] short demonstration up to and including [one] month."  *Id.*

[16] There is no dispute as to whether the VE's interrogatory response is to be treated as testimony for purposes of the Plaintiff's second challenge.

[17] Reasoning levels measure a claimant's ability to engage in certain basic functions related to education and mandate the claimant to be capable of carrying out instructions and performing mental tasks.  DOT, App'x C (4th ed. 1991), 1991 WL 688702.  Reasoning levels range from one to six, with one being the lowest and six being the highest.  *Id.*

standardized situations," DOT #379.367-010, 1991 WL 673244 (surveillance-system monitor) (G.P.O. 4th ed., rev. 1991).  The Plaintiff asserts that these requirements are inconsistent with unskilled work, which involves only simple, routine tasks.  (Doc. 16 at 18–19) (citing *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1311 (11th Cir. 2021); *Washington*, 906 F.3d at 1362–65; *Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017); *Neefe v. Comm'r of Soc. Sec.*, 531 F. App'x 1006, 1007 (11th Cir. 2013)).

The problem with the Plaintiff's contention is that—as she herself essentially acknowledges in her memorandum—the ALJ's RFC determination does not contain any accommodations for cognitive deficits which would prevent her from fulfilling the demands associated with a reasoning level of three.  DOT #379.367-010, 1991 WL 673244.  Quite the opposite.  As alluded to previously, in discounting the Plaintiff's reported cognitive symptoms, the ALJ credited certain of the findings of Drs. Jimenez and Schreier, which—per the ALJ—showed, among other things:

> [The Plaintiff] exhibited normal motor function, unremarkable speech, and relevant, coherent, and logical thought processes [in her examination with Dr. Jimenez].  She exhibited fair attention and concentration, and was able to attend to most of the examiner[']s questions without distraction. She also demonstrated adequate mental flexibility, and exhibited no significant difficulties in processing speed.  Furthermore, the [Plaintiff] had adequate receptive language, expressive language, and immediate memory.  She exhibited good remote memory, and adequate mental computation skills.  The [Plaintiff] also exhibited good social skills, with adequate abstract reasoning, good judgment related to self-care and social problem-solving, and good insight overall.  The [Plaintiff's] overall intelligence was considered average, and she exhibited coherent general thought processes, despite somatically focused thought form and content.  A mental status examination from [Dr. Schreier's] consultative examination similarly revealed good

memory for history, dates, and sequential events.  The [Plaintiff] also exhibited good general understanding, with cooperative behavior and no grossly abnormal observations, aside from a somewhat tearful affect.

(R. 33) (citations omitted); *see also* (R. 35) (finding persuasive Dr. Jimenez's opinion that the Plaintiff had "no limitations in her ability to understand, remember, and carry out instructions and [to] make judgments on simple *and complex work-related decisions*") (citing R. 1299–1305) (emphasis added).

As referenced earlier, the Plaintiff does not contest these findings or the ALJ's decision not to fully accept her subjective complaints, and she has thus waived any such claim of error.  *See Harner*, 38 F.4th at 899; *Battle*, 787 F. App'x at 687; *Outlaw*, 197 F. App'x at 828 n.3.  As a result, the Plaintiff's assertion that there is an apparent conflict under SSR 00-4p based on the reasoning level of three for the surveillance system monitor position fails given that the ALJ's RFC determination properly omitted any restrictions relating to the Plaintiff's cognitive abilities.  *See Larry v. Comm'r of Soc. Sec.*, 2022 WL 2128802, at *5 (M.D. Fla. June 14, 2022) (finding no apparent conflict where the ALJ did not adopt the limitations which the plaintiff maintained would have created such a conflict); *Johnson v. Saul*, 2021 WL 1041726, at *14 (M.D. Fla. Mar. 18, 2021) (concluding that there is no apparent discrepancy between the DOT's reaching requirement for the representative occupation and the VE's testimony about that position where the VE did not propose the restriction at issue).

The Plaintiff's reliance on the decisions in *Viverette*, *Mijenes*, and *Neefe* does not alter this conclusion.  Unlike here, the claimants in those cases were all found to have mental limitations which had to be accounted for in their respective RFCs.  *Viverette*, 13 F.4th at 1311 (noting that the ALJ's RFC determination confined the claimant "to simple, routine, and repetitive tasks" and "simple work-related decisions"); *Mijenes*, 687 F. App'x at 845–46 (observing that the ALJ's RFC imposed non-exertional limitations related to understanding, remembering, and carrying out instructions); *Neefe*, 531 F. App'x at 1007 (stating that the ALJ accommodated the claimant's moderate limitation in concentration, persistence, and pace by restricting his hypothetical to the VE to only simple tasks or unskilled work).

In addition to her efforts to convince the Court that there is an apparent discrepancy between her cognitive abilities and those needed for the surveillance system monitor position, the Plaintiff alternatively contends that certain of the exertional and environmental limitations in the ALJ's RFC determination conflict with the DOT's description of that occupation.  (Doc. 16 at 20–21).  The job requirements cited by the Plaintiff, however, are not derived from the DOT but from the United States Department of Labor's *Revised Handbook for Analyzing Jobs*.  *Compare id.* at 21 *with* U.S. Dep't of Labor, *The Revised Handbook for Analyzing Jobs* 4-28 (1991).  While this publication may include information from the DOT, it does not provide a basis for claiming that there is a cognizable discrepancy under *Washington* between the DOT and the VE's testimony.  *See Sansom v. Saul*, 2021 WL 3476598, at *6 (M.D. Fla. June 30, 2021) (finding there was no conflict between the DOT and the VE's testimony

where the plaintiff relied upon the *Revised Handbook for Analyzing Jobs* to identify skills which he purported materially differed from those designated by the VE because the DOT did not require those same skills), *report and recommendation adopted*, 2021 WL 3205695 (M.D. Fla. July 29, 2021); *see also Mesa v. Kijakazi*, 2022 WL 4369733, at *12–13 (S.D. Fla. May 11, 2022) (concluding that an ALJ is "not required to address any purported conflicts between the VE's testimony and" the *Revised Handbook for Analyzing Jobs* pursuant to *Washington*), *report and recommendation adopted*, 2022 WL 4366950 (S.D. Fla. Sept. 21, 2022).

The Plaintiff's final contention in support of her second challenge pertains to her capacity to sit for only five hours rather than the full six hours and her need for a sit/stand option.  The Plaintiff argues the ALJ should have asked the VE whether the number of available surveillance system monitor positions that he said existed in the national economy took into account the erosion in the occupational base due to the Plaintiff's above limitations.  (Doc. 16 at 21–23).  This contention fails.

There does not appear to be a dispute between the parties that the surveillance system monitor position is a "sedentary" occupation.  *Id.* at 21.  The DOT defines the physical demands of this position as including the following:

> [e]xerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body.  Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time.  Jobs are sedentary if walking and standing are required only occ[ ]asionally and all other sedentary criteria are met.

DOT #379.367-010, 1991 WL 673244 (surveillance-system monitor).  More broadly, the SSA defines a full range of sedentary work as requiring, among other things, the ability to sit for six hours out of an eight-hour workday.  *See* SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996) ("The ability to perform the full range of sedentary work" involves "[s]itting [that] would generally total about [six] hours of an [eight]-hour workday."); SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) (stating that a full range of sedentary work means "walking and standing are required occasionally. . . . '[O]ccasionally' at the sedentary level of exertion[ includes] periods of . . . sitting [that] should generally total approximately [six] hours of an [eight]-hour workday").

Citing these rulings, the Plaintiff asserts that there is a conflict between the DOT's sedentary requirements and the sitting restriction in the ALJ's RFC determination.  The DOT, however, does not specify the length of time a claimant is expected to be off her feet while performing the surveillance system monitor job and instead states only that sitting would be done "most of the time."  DOT #379.367-010, 1991 WL 673244 (surveillance system monitor).  Thus, based on the plain language in the DOT, there is no "apparent" discrepancy because sitting for five hours out of an eight-hour workday would involve sitting for "most of the time."  *See Christmas v. Comm'r of Soc. Sec.*, 791 F. App'x 854, 857 (11th Cir. 2019) (noting that an ALJ is not obligated "to draw inferences about job requirements that are unsupported by the DOT's text and then resolve conflicts between the VE's testimony and those unsupported inferences") (citing *Washington*, 906 F.3d at 1358); *see also Jeremy J.D. v.*

*Saul*, 2020 WL 5880465, at *4 (C.D. Cal. Oct. 1, 2020) (deciding that "[b]ecause the DOT does not specify the standing/walking requirements of the alternative jobs, the [c]ourt cannot find that there is an obvious or apparent conflict between the DOT and the VE's testimony" and collecting cases); *cf. Larry*, 2022 WL 2128802, at *5 (concluding that there was no apparent conflict where the definition relied upon by the claimant was broader than the limitations imposed by the ALJ).

This conclusion is bolstered by the fact that the DOT's description of the surveillance system monitor position delineates a more precise frequency with which a claimant would be expected to exert force but does not do so with respect to the sitting restriction, suggesting that the latter limitation is not to be applied with the same level of exactitude.   Even were that not the case, the possibility that there might be some "potential tension" between the restrictions in the ALJ's RFC determination and the sitting requirement for the surveillance system monitor position does not mean that an "apparent" discrepancy exists. *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1323 (11th Cir. 2021) (finding that although there was "potentially tension" between a claimant's limitations and DOT requirements, "that tension [did] not rise to the level of an 'apparent' conflict") (citing *Washington*, 906 F.3d at 1366).

Moreover, while the Plaintiff correctly references the sitting portion of the SSA's broad definition of a full range of sedentary work, a sedentary occupation is not defined solely by its sitting criteria.  It also includes considerations regarding, among other capabilities, lifting, carrying, and the use of a claimant's hands and fingers. *See* SSR 96-9p, 1996 WL 374185, at *3 ("The ability to perform the full range of sedentary

work requires the ability to lift no more than [ten] pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. . . .  Unskilled sedentary work also involves other activities, classified as 'nonexertional,' such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions."); SSR 83-10, 1983 WL 31251, at *5 ("The [R]egulations define sedentary work as involving lifting no more than [ten] pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . .  Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.").

Similarly, the DOT's characterization of the surveillance system monitor position as sedentary is not confined merely to aspects involving sitting.  *See* DOT #379.367-010, 1991 WL 673244 (surveillance system monitor).  Therefore, as other courts have observed, the classification of an occupation as sedentary may not always necessitate six hours of sitting and may be more informed by various strictures unrelated to sitting, especially where—as here—the DOT does not expressly provide that a claimant must be able to sit for six hours.  *See Jeremy J.D.*, 2020 WL 5880465, at *3–4  (collecting cases).

The Court is likewise unpersuaded by the Plaintiff's claim that the ALJ did not properly address the extent to which the Plaintiff's sitting limitation and need for a sit/stand option would erode the number of jobs available to her in the national economy.  (Doc. 16 at 21–22).  Contrary to the Plaintiff's contention, the ALJ expressly considered this issue in his decision:

31

> If the [Plaintiff] had the [RFC] to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.21.  However, the [Plaintiff's] ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled sedentary occupational base, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with the [Plaintiff]'s age, education, work experience, and [RFC].  The [VE] testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as: Surveillance Systems Monitor.

(R. 38) (citation omitted).  Because the hypothetical posed to the VE included the Plaintiff's sitting limitation and a sit/stand option as part of the RFC and the VE testified that his response was based on this, and other, factors, the ALJ satisfied his duty to evaluate the erosion of jobs based on these limitations.  *See Watson v. Astrue*, 376 F. App'x 953, 959 (11th Cir. 2010) ("The VE's testimony established that there were a significant number of jobs in the economy to which [the claimant] could adjust, which is what the statute and [R]egulations require at step five of the sequential evaluation.") (citing 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c)).  And, to the extent the Plaintiff urges the Court to require the ALJ to state how many jobs were eroded, the Regulations do not mandate such an "explicit numerical finding[ ]." *Id.*

In sum, there are no apparent conflicts between the VE's response to the interrogatory questionnaire and the DOT.  As a result, the VE's response constitutes substantial evidence on which the ALJ properly relied in finding that the Plaintiff could perform the surveillance system monitor position and in concluding that the

Plaintiff was not disabled.  *See Jones v. Comm'r of Soc. Sec.*, 423 F. App'x 936, 938 (11th Cir. 2011).  The Plaintiff's second challenge is therefore unavailing.

IV.

Based upon the foregoing, it is hereby ORDERED:

1.      The Commissioner's decision is affirmed.

2.      The Clerk is directed to enter Judgment in the Defendant's favor and to close the case.

SO ORDERED in Tampa, Florida, this 28th day of November 2022.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record